
## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

## BUTTE DIVISION

ANDERSON ZURMUEHLEN & CO,
P.C.,

    Plaintiff,

v.

NEW YORK MARINE AND
GENERAL INSURANCE
COMPANY,

    Defendant.

_____

NEW YORK MARINE AND
GENERAL INSURANCE
COMPANY,

    Counterclaimant,

v.

ANDERSON ZURMUEHLEN & CO,
P.C.,

    Counterdefendant.

No. CV-14-33-BU-SEH

**ORDER**

1

## INTRODUCTION

Plaintiff, Anderson ZurMuehlen & Co, P.C. ("AZ"), brought this action for declaratory judgment that it had no obligation to Defendant, New York Marine and General Insurance Company ("NYM"), under the Confidential Settlement and Release Agreement of August 6, 2012 ("Agreement"), for claims made against NYM by Billie L. Redding ("Redding") in *Billie L. Redding v. ProSight Specialty Management Company, Inc., et al*, Case No. CV 12-98-H-CCL (D. Mont. 2012) ("*Redding*"). NYM by counterclaim sought a declaratory judgment that AZ had a duty under the Agreement to hold harmless, defend, and indemnify NYM for the costs it incurred in defending claims brought against it by Redding. Issues of material fact are resolved.

The parties cross-motions for summary judgment were heard on June 24, 2016. No issues of material fact remain for resolution. The matter is ripe for decision on the merits.

## BACKGROUND

This controversy has a long and complex history spanning several years. The relevant events were played out in four distinct litigation phases.

The first phase, the "Underlying Action," began in 2009. Redding and other

2

claimants brought separate actions against AZ alleging that AZ "improperly advised them to invest in certain tenant-in-common property exchanges."[1] AZ tendered the claims to its insurer, NYM, which defended the claims under a reservation of rights. Ultimately, all the claimants agreed to a global settlement of $4.65 million. NYM contributed $4 million to the settlement, the limit of its coverage to AZ. AZ contributed $650,000. As part of the global settlement, AZ and NYM negotiated and executed the Agreement. Interpretation of this Agreement is the matter at issue in this case.

The second phase, the "Coverage Action," began in 2009 shortly after the Underlying Action was commenced.[2] In that case, AZ sought declaratory judgment on its rights under the insurance contracts issued by NYM. It was, however, never fully adjudicated and was dismissed with prejudice as a component of the global settlement.

The "*Redding* Action," the third phase, was commenced by Redding against NYM in 2012. There, Redding alleged, *inter alia*, that NYM acted in bad faith in settling her claims in the Underlying Action contrary to Montana's Unfair Trade

---

[1] Doc. 143 at 2.

[2] *Anderson ZurMuehlen & Co., P.C. v. New York Marine & General Insurance Company, et al.*, DDV 2011-942 (First Judicial Dist., Dist. Ct. Mont. 2011).

Practices Act ("UTPA").[3] Judge Lovell of this Court, in an exhaustive 104-page opinion: (1) granted NYM's motion for summary judgment; (2) found no evidence of wrongdoing on the part of NYM; and (3) dismissed Redding's claims.[4]

This case, the "Fourth Phase," was originally filed on April 17, 2014, in the Montana Second Judicial District Court, Silver Bow County.[5] It was removed to this Court on May 20, 2014.[6]

## ISSUE

The issue before the Court is whether the indemnity provision of the Agreement requires AZ to indemnify NYM for costs incurred in defending the *Redding* Action. The answer is "yes."

## DISCUSSION

### *Relevant Contractual Provisions*

**4.     RELEASE**

4.1     Definitions

(a)  "Released Claims" means any and all actual or

---

[3] *Redding*; Mont. Code Ann. §§ 33-18-101 to -1006 (2015).

[4] Doc. 144-7.

[5] *Anderson ZurMuehlen & Co., P.C. v. New York Marine & General Insurance Company*, CDV 2014-153 (Second Judicial Dist., Dist. Ct. Mont. 2014).

[6] Doc. 1.

potential liabilities, demands, causes of action, costs, expenses, attorneys' fees, damages, indemnities and obligations of every kind at law and equity or otherwise, whether known or unknown, suspected or unsuspected, disclosed or undisclosed, that arise out of, relate to, result from or are in any way connected to (i) the Underlying Actions or any set of facts that is the same as, materially similar to or related to the facts alleged in the Underlying Actions, (ii) the Coverage Action or (iii) with the limited exception of the *Tvetene* Claim, the New York Marine Policies. "Released Claims" specifically include, but are not limited to, all claims that were alleged or could have been alleged in the Coverage Action, including claims for breach of contract, bad faith, and indemnity.[7]

. . . .

## 5.    INDEMNIFICATION

If any entity or person asserts a claim or claims against any of the New York Marine Releasees seeking damages, declaratory relief or other relief arising out of or related to the Coverage Action, the Underlying Actions or any set of facts that is the same as, materially similar to or related to the facts alleged in the Underlying Actions, the Insureds agree to indemnify and hold such New York Marine Releasee harmless for and from, and to defend such New York Marine Releasee, using counsel acceptable thereto, against any and all claims, actions, causes of action, demands, rights, liabilities, damages, losses, costs or expenses, including all reasonable attorneys fees, expenses and liability incurred as a result of any such claim or any action or proceeding brought thereon.[8]

---

[7] Doc. 27-1 at 3.

[8] Doc. 27-1 at 4.

. . . .

## 15.   JOINT DRAFTING

Each of the Parties acknowledges that it has participated in the drafting and negotiation of this Agreement.  For purposes of interpreting this Agreement, each provision, paragraph, sentence and word herein shall be deemed to have been jointly drafted by the Parties.  The Parties intend for this Agreement to be construed and interpreted neutrally in accordance with the plain meaning of the language contained herein and not presumptively construed against any actual or purported drafter of any specific language contained herein.[9]

. . . .

## 19.   GOVERNING LAW/FORUM AND ATTORNEYS' FEES

19.1  This Agreement shall be governed by the laws of the State of New York and shall be construed and enforced in accordance with the laws of the State of New York as applied to contracts made and to be performed entirely in New York.[10]

### *Choice of Law*

The parties agreed to construe and enforce the Agreement in accordance with

New York law.  The choice-of-law provision is clear.

---

[9] Doc. 27-1 at 6.

[10] Doc. 27-1 at 6.

AZ concedes that "New York and Montana law is [*sic*] similar with respect to the pertinent contract issues."[11] It maintains, however, that "[t]he choice of law provision should not be enforced in the event that applying New York law would be contrary to Montana public policy."[12] NYM's position, on the other hand, focuses solely on what it asserts to be applicable and controlling New York law.

A federal court sitting in diversity is to apply the choice-of-law rules of Montana – the forum state.[13] In Montana, the Restatement (Second) of Conflict of Laws § 187 is followed. "[W]e . . . apply the 'law of the state chosen by the parties to govern their contractual rights.'"[14] However, a choice-of-law provision is not to be applied:

> (1) if, but for the choice-of-law provision, Montana law would apply under § 188 of the *Restatement*; (2) if Montana has a materially greater interest in the particular issue than the state chosen by the parties; and (3) if applying the state law chosen by the parties would contravene a fundamental policy of Montana.[15]

---

[11] Doc. 139 at 7.

[12] Doc. 139 at 7 (citing *Modroo v. Nationwide Mut. Fire Ins. Co.,* 191 P.3d 389, 400 (Mont. 2008)).

[13] *Mason and Dixon Intermodal, Inc. v. Lapmaster Int'l, LLC,* 632 F.3d 1056, 1060 (9th Cir. 2011); *Johnson v. Wells Fargo Home Mortg., Inc.,* 635 F.3d 401, 420 n. 16 (9th Cir. 2011).

[14] *Modroo,* 191 P.3d at 400 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187) (AM. LAW INST. 1971 )).

[15] *Modroo,* 191 P.3d at 400.

AZ argues that the indemnification provision in the Agreement purports to indemnify NYM "for damages flowing from intentional wrongdoing," specifically, intentional conduct in violation of the UTPA alleged in the *Redding* action.[16] And, it argues, the Montana Supreme Court has recognized that "[p]ublic policy forbids indemnifying willful wrongdoing" in the context of insurance coverage.[17]

AZ's argument, however, ignores a critical component of Judge Lovell's basis for dismissing the *Redding* Action.

> Because under Montana law insurers are not found to be in bad faith if they have a reasonable basis for contesting a claim, NYM did not commit bad faith by declining to settle with Redding in February and March, 2011. NYM conducted a reasonable investigation into Redding's claim and had a reasonable basis in law for declining to settle Redding's claim in February and March, 2011. Redding's leveraging claim that NYM unreasonably refused to settle with her in order to force a global settlement is not supported by this record . . . . NYM did pay $4 million to Deola, and there is no evidence in the record to support Redding's claim that NYM delayed paying policy limits ($4 million). This case turned out to be a fishing expedition that yielded no catch. NYM is therefore entitled to summary judgment on Redding's common law and statutory bad faith claims.[18]

---

[16] Doc. 139 at 26-27.

[17] *Smith v. State Farm Ins. Companies*, 870 P.2d 74, 76 (Mont. 1994).

[18] Doc. 144-1 at 103.

Judge Lovell found no wrongdoing on the part of NYM in settling the Underlying Action. AZ's argument simply misses the mark.

This Court finds no showing that enforcing the indemnity provision under New York law would be contrary to public policy of Montana. NYM does not seek indemnity for damages caused by "intentional wrongdoing." Rather, it seeks indemnity under a contractual provision for costs incurred in defending itself against claims which were dismissed in its favor. Application of New York law did not contravene a fundamental policy of Montana.[19] The choice of New York law in the contract is valid and enforceable and to be applied.

### *Contract Interpretation – New York Law*

New York courts "have long adhered to the 'sound rule in the construction of contracts, that where the language is clear, unequivocal and unambiguous, the contract is to be interpreted by its own language.'"[20] New York's highest court has recognized, "when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms.

---

[19] *Smith,*, 870 P.2d at 76 ("Public policy forbids indemnifying willful wrongdoing . . . .").

[20] *R/S Associates v. New York Job Dev. Auth.*, 771 N.E.2d 240 (2002) (quoting *Springsteen v. Samson*, 32 N.Y. 703, 706 (N.Y. 1865) [citing *Rogers v. Kneeland*, 10 Wend. 218 (N.Y. 1833)]).

Evidence outside the four corners of the document as to what was really intended but was unstated or misstated is generally inadmissible to add to or vary the writing."[21]

The indemnity provision of the Agreement states in pertinent part,

> If any entity or person asserts a claim or claims against any of the New York Marine Releasees seeking damages . . . arising out of or related to the Coverage Action, [or] the Underlying Action . . . the Insureds agree to indemnify . . . and to defend . . . any and all claims . . . .[22]

The contract language is clear.

The fees sought by NYM here were incurred in defending against Redding's UTPA claims which alleged, *inter alia*, that NYM failed to promptly and equitably settle, and failed to adequately investigate, the Underlying Claims. Redding's claims unequivocally arose out of and related to the alleged misconduct of NYM in settling the Underlying Claims. By the plain language of the indemnity provision, NYM was entitled to indemnity from AZ for the costs it incurred in defending against Redding's UTPA claim.

---

[21] *W.W.W. Associates v. Giancontieri*, 566 N.E.2d 639, 642 (1990).

[22] Doc. 27-1 at 4.

Both parties to the Agreement were sophisticated corporate entities represented by experienced and competent counsel. The plain language of the provision requiring indemnification for any and all such claims which arise out of or relate to the Underlying Action included third-party bad faith claims. Had AZ elected to carve out an exception to that provision, it had the capacity to negotiate such an exception and include it in the Agreement. It did not do so. It is bound by the contract it signed. The indemnity provision is to be enforced as written.

### Extrinsic Evidence

New York law follows the general rule of contract interpretation that "extrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous."[23] The contract here is unambiguous. Consideration of extrinsic evidence is neither necessary nor appropriate.

### Indemnity for Negligent or Intentional Acts

AZ contends that indemnification for fees incurred in defending against Redding's UTPA claims would constitute indemnity for negligent and intentional wrongful acts which would be contrary to New York law. This contention is unsupported in fact.

---

[23] *Riverside S. Planning Corp. v. CRP/Extell Riverside, L.P.*, 869 N.Y.S.2d 511, 516 (N.Y. 2008).

Redding's UTPA claims against NYM were dismissed on summary judgment. Judge Lovell specifically held NYM acted in accordance with law in negotiating and settling the Underlying Action. Neither negligent nor intentional wrongdoing was established. In the end, the *Redding* Action appropriately was characterized as "a fishing expedition that yielded no catch."[24]

Enforcement of the indemnity provision as written did not require AZ, under the facts and circumstances of the case, to indemnify NYM for intentional wrongful acts or negligent wrongdoing. Enforcement of the indemnity provision conforms to New York law.

## CONCLUSION

The Agreement included a valid and enforceable choice-of-law provision. The indemnity provision in the contract applied to "any and all claims" "arising out of or related to," *inter alia*, the Underlying Action. Redding's UTPA claims were covered by the provision. NYM is entitled to indemnity by AZ for the costs incurred in defending the *Redding* Action.

---

[24] Doc. 144-7 at 103.

**ORDERED:**

1.    Plaintiff's Motion for Summary Judgment[25] is DENIED.

2.    Defendant's Motion for Summary Judgment[26] is GRANTED.

3.    The clerk is directed to enter judgment accordingly.

DATED this __27th__ day of June, 2016.

SAM E. HADDON
United States District Judge

---

[25] Doc. 137.

[26] Doc. 132.